IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **Burley Foods, LLC** | ) | Case No. 22-30532 |
| | ) | |
| Debtor. | ) | |

# DECLARATION OF MARCUS R. BURLEY

Marcus R. Burley declares under penalty of perjury as follows:

1.    I am an adult citizen and resident of Union County, North Carolina, am competent to testify, and make this declaration based on personal knowledge.

2.    I submit this Declaration in support of the following motions filed in the above captioned bankruptcy case:

    a.   *Motion for Authority to use Cash Collateral* [Doc. 4] (the "Cash Collateral Motion");

    b.   *Motion for Order Authorizing (I) Maintenance of Existing Bank Account and Cash Management System, (II) Continued Use of Existing Business Forms, (III) Payment of Prepetition Charges and Fees Associated with Customer Credit Card Transactions and Debit Card Transactions, and (IV) Performance under Franchise Agreement* [Doc. 5] (the "Business Practices Motion");

    c.   *Motion for Entry of an Order Authorizing Debtor to Maintain and Administer its Existing Customer Practices and to Honor Certain Related Prepetition Obligations* [Doc. 6] (the "Customer Practices Motion"); and

    d.   *Motion for Authority to Pay Pre-Petition Payroll, Payroll Taxes, and Other Related Expenses* [Doc. 7] (the "Payroll Motion" and the Payroll Motion with the Cash Collateral Motion, Customer Practices Motion, and Business Practices Motion, the "First Day Motions").

3.    The First Day Motions are attached to this Declaration. I have reviewed the First Day Motions and affirm the accuracy of the facts set forth in each. To provide additional background on the Debtor's bankruptcy filing and operations, I further declare as follows:

4.    The Debtor, Burley Foods, LLC, operates a Saladworks restaurant franchise located in the Ballantyne area of Charlotte. The Debtor focusses on serving healthy, fresh food that is made to order in front of each customer.

1

5. I am the sole member and Chief Executive Officer of the Debtor. In addition, I work behind the counter at the Debtor, uncompensated, for approximately 25 hours per week.

6. In my role with the Debtor, I am familiar with all aspects of the business and finances though I do rely on a bookkeeper and store manager for certain tasks.

7. In early 2020, I opened the Debtor. Unfortunately, the opening coincided with the outbreak of the Covid-19 pandemic.

8. On March 10, 2020, Governor Roy Cooper issued Executive Order No. 116, declaring a state of emergency in North Carolina due to the outbreak of Covid-19. Shortly thereafter, Governor Cooper issued Executive Order 118 in which he ordered that restaurants limit the sale of food and beverage to carry-out and delivery, only. Then, on March 27, 2020, Governor Cooper issued Executive Order 121, restricting travel within North Carolina to defined Essential Activities.

9. The effects of the Covid-19 pandemic and the measures taken to limit the resulting casualties were devastating to the economy, particularly to restaurants. Given that the area surrounding the Debtor is significantly comprised of offices that were closed and slow to reopen, the Debtor's business was hit especially hard by the pandemic.

10. As a result, the Debtor fell behind on rent payments to its landlord, North Community House Road Partners, LLC (the "Landlord"), whose ultimate parent appears to be Red Ventures, LLC.

11. The Landlord agreed to defer lease payments. The Debtor and the Landlord amended their lease agreement to permit the Debtor to pay the deferred lease over time.

12. As of August 24, 2022, the Landlord asserted the deferred rent amounted to $7,841.49.

13. On October 13, 2022, the Landlord demanded that the Debtor pay all amounts due on or before October 31, 2022 and for possession of the Debtor's leased space.

14. I have attempted to contact the Landlord's attorneys numerous times to discuss payment of the back rent. My calls and emails went mostly unreturned.

15. Worried about the Landlord's apparent position regarding the deferred rent and lack of communication, on October 19, 2022, the Debtor obtained a loan from Good Funding, LLC ("Good Funding") in order to cure the alleged default to the Landlord.

16. On October 20, 2022, the Debtor paid the Landlord $3,800.00 as a show of good faith; I believed this amount would be sufficient to bring the Debtor current on the amount owed to the Landlord in October.

17. By letter dated October 28, 2022, the Landlord asserted that the Debtor had no right to cure monetary defaults. The Landlord returned the Debtor's $3,800.00 payment and demanded possession of the Debtor's premises.

18. Until receiving the Landlord's last demand letter, I did not believe that a bankruptcy case was in the Debtor's immediate future given the seeming end to the Covid-19 pandemic and, importantly, that workers were beginning to return to work in the many office buildings surrounding the Debtor.

19. A significant portion of the funds received from Good Funding remained in the Debtor's bank account on the date this bankruptcy case was filed, November 1, 2022 (the "Petition Date").

20. After the Petition Date, Good Funding withdrew $1,101.08 from the Debtor's Bank of America account. I understand that the Debtor's attorney has been in contact with Good Funding's attorney regarding this withdrawal and the Debtor's bankruptcy case generally.

21. In addition to the funds received from Good Funding, the Debtor's bank account included money generated from sales and funds I personally contributed to the Debtor to cover emergency expenses. I am working to provide my attorney a breakdown of the source of the funds on hand in order to determine what, if anything, is encumbered by liens of creditors.

22. Further, I have reviewed the Budget attached to the Cash Collateral Motion. The expenses shown on the Budget are my best prediction of the needs of the Debtor in the coming month. I predict that the Debtor will gross approximately $31,000.00 during the next month, which is a conservative estimate due to uncertainty about revenue during the week of Thanksgiving.

23. The costs of labor shown on the Budget include wages owed for a short period of time between the Debtor's last pay day and the Petition Date. All employees to be paid continue to work for the Debtor after the Petition Date and are critical to the Debtor's ongoing operations. If the Debtor were to delay payment to its employees, I predict that they would find other employment. The job market in the restaurant industry is extremely tight such that I believe I would struggle to replace any employees who resigned.

24. The Franchise Fee shown on the Budget are for amounts due to Saladworks, LLC ("Saladworks"). In exchange for a small percentage of the Debtor's revenue, Saladworks permits the Debtor to use of its intellectual property, provides marketing for the Debtor, and supports other, everyday business functions. The relationship between Saladworks and the Debtor is critical. The amount shown on the Budget owed to Saladworks (approximately $725.00) includes amounts owed for sales prior to the Petition Date. Attempting to delineate between amounts owed to Saladworks under the agreement for pre- versus post- petition franchise fees would be time consuming and costly; I believe that task would be more burdensome than beneficial.

25. With respect to the Debtor's bank account, I have opened a new account for the Debtor since the Petition Date. I withdrew funds from the Debtor's old account at Bank of America to fund the new account. I left sufficient funds in the Debtor's Bank of America account to pay expenses shown on the Budget for one week so that payments to food suppliers and the Landlord would not be disrupted. I intend to transition all activity to the new account in the coming weeks.

26. As for the Debtor's Card Processing System, Debtor's revenue is primarily generated from credit card and debit card sales. The Debtor uses WorldPay, Inc. (the "Card Processor") to process payments. The amounts shown on the Budget owed for Credit Card Processing include amounts owed for pre-petition services. I believe it is necessary to pay these fees to ensure that the Card Processor timely remits payments processed in the days prior to the Petition Date and continues to maintain the Debtor's account. The disruption and adverse publicity that would necessarily result from the failure to continue to offer credit card and debit card payment options would threaten the Debtor's customer base and its ability to successfully reorganize.

27. Similarly, if the Debtor were to stop honoring previously issued gift cards or promotions, I believe the Debtor would suffer significant adverse publicity and alienate its customer based. Therefore, permitting the Debtor to continue the programs more fully described in the Customer Practice Motion in the same manner as prior to the Petition Date is critical to the Debtor's ongoing success.

Pursuant to 18 U.S.C. § 1746, I, Marcus R. Burley, certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Dated: Charlotte, North Carolina
11/7/2022

Marcus R. Burley

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **Burley Foods, LLC** | ) | Case No. 22-30532 |
| | ) | |
| Debtor. | ) | |

## MOTION FOR AUTHORITY TO USE CASH COLLATERAL

Burley Foods, LLC (the "Debtor"), debtor and debtor-in-possession in the above-captioned case requests entry of an order authorizing the use of cash collateral. In support of this Motion, the Debtor respectfully represents and states as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).

2. The statutory predicates for relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

### BACKGROUND

3. On November 1, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

4. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code. No examiner or statutory committee has been appointed in this case.

5. According to the North Carolina Secretary of State's website, two entities have filed UCC financing statements against the Debtor to perfect alleged debts:

a. No. 20200081667C, filed by CapStar Bank claims a blanket lien on all the Debtors assets. The Debtor believes this financing statement relates to startup capital provided by CapStar Bank to the Debtor pursuant to a Small Business Administration (the "SBA") loan.

b. No. 20210129440G, filed by the SBA claims a blanket lien on all the Debtor's assets. The Debtor believes this financing statement relates to an Economic Injury Disaster Loan provided by the SBA during the Covid-19 Pandemic.

6. One or more of the entities that filed the UCC financing statements likely have liens against a *portion* of the Debtor's cash collateral (i.e. the funds in the Debtor's bank account and outstanding receivables).

7. However, the majority of the funds in the Debtor's bank account are traceable to a loan provided to the Debtor by Good Funding, LLC ("Good Funding") on or about October 19, 2022 (the "Good Funding Loan"). The facts related to the Good Funding Loan are as follows:

a. During the Covid-19 Pandemic, the Debtor fell behind on rent payments to its landlord, North Community House Road Partners, LLC (the "Landlord"). The Landlord agreed to defer the late rent.

b. The Debtor and Landlord entered into lease amendments related to the deferred rent, which permitted the Debtor to repay the deferred rent in installments.

c. As of August 24, 2022, the Landlord asserted the deferred rent amounted to $7,841.49.

d. On October 13, 2022, the Landlord demanded that the Debtor pay all amounts due on or before October 31, 2022. Upon information and belief, the Landlord asserted the balance owed was then approximately $20,000.000.



Case 22-30532    Doc 22    Filed 11/07/22    Entered 11/07/22 16:03:01    Desc Main
                            Document      Page 6 of 16

Case 22-30532    Doc 4    Filed 11/01/22    Entered 11/01/22 18:59:20    Desc Main
                        Document      Page 4 of 7

Because the amount and timing of all expenses cannot be predicted exactly, the Debtor proposes that it be considered in compliance with the Budget so long as the Debtor does not exceed the Budget by more than 10% per line item (on a cumulative basis).

11. The Debtor requests a preliminary hearing on an expedited basis to approve this interim request pursuant to Bankruptcy Rule 4001(b)(2) and that a final hearing be set at the Court's discretion.

**BASIS FOR RELIEF REQUESTED**

12. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without consent of the secured party or court approval. 11 U.S.C. § 363(c)(2). After notice and a hearing, the Court may approve a debtor's use of cash collateral without the secured creditor's consent, but "to the extent necessary to avoid immediate an irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b).

13. In order for a court to authorize the use of cash collateral over a secured party's objection, the secured party's interest in the cash collateral must be adequately protected. In the context of a cash collateral motion, the purpose of adequate protection is to protect the secured lender from a diminution in the value of its collateral during the period in which it is prevented from foreclosing upon such collateral by the automatic stay. *In re Delta Resources, Inc.*, 54 F.3d 722, 728-30 (11th Cir. 1995).

14. Courts have found that a secured creditor is adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time. *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D. N.H. 1993) (secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining); *In re May*, 169 B.R. 462 (Bankr. S.D.

---

Case 22-30532    Doc 4    Filed 11/01/22    Entered 11/01/22 18:59:20    Desc Main
                        Document      Page 3 of 7

e. On October 19, 2022, the Debtor obtained the Good Funding Loan in order to cure the alleged default to the Landlord.

f. On October 20, 2022, the Debtor paid $3,800.00 to the Landlord as a show of good faith.

g. On October 28, 2022, prior to the deadline in the Landlord's previous correspondence, the Landlord informed the Debtor that the Debtor had no right to cure monetary defaults. The Landlord returned the Debtor's prior payment and demanded possession of the Debtor's premises.[1]

8. The funds traceable to the Good Funding Loan are in an account on which neither CapStar Bank nor the SBA have a control agreement. The funds traceable to the Good Funding Loan are thus unencumbered by the liens of CapStar Bank and the SBA (the "Creditors").

9. In any event, other funds in the Debtor's account and in process are likely encumbered by liens of the Creditors and use of the same will be necessary for the Debtor's reorganization. Given the nature of the Debtor's business and limited assets, it appears that the value of any such liens is minimal.[2]

**RELIEF REQUESTED**

10. Pursuant to this Motion, on an interim basis, the Debtor seeks authority to use cash collateral in the ordinary course of business. The Debtor proposes to use the cash collateral in accordance with a formal budget (the "Budget"), prepared by the Debtor, a preliminary draft of which is attached hereto as Exhibit 1 which is incorporated by reference as if fully set forth herein.

---

[1] As of the Petition Date, the Landlord had not terminated the Debtor's lease.

[2] The Debtor reserves the right to challenge the perfection of any liens at a later date including the liens allegedly perfected by the Creditors. Moreover, the Debtor reserves the right to challenge the value of the purported collateral secured by the Creditors and the underlying indebtedness that may be asserted.



Ga. 1994) (equity cushion in property may provide creditor with adequate protection of its interest, sufficient to permit the debtor to use cash collateral); 3 COLLIER ON BANKRUPTCY ¶ 362.07 (16th Ed. 2020).

15. Any creditors with a lien against the Debtor's cash collateral have adequate protection against the diminution in value of their pre-petition collateral. Preliminarily, the use of cash collateral in the ordinary course of business, in and of itself, provides adequate protection in that it preserves the going concern value of the Debtor's business and consequently the value of the pre-petition collateral. Moreover, to protect against diminution in the value of the pre-petition collateral, the Debtor proposes to provide the Creditors with replacement liens in post-petition assets to the same extent and priority as existed pre-petition, for all cash collateral actually expended during the duration of the interim cash collateral Order.

16. The Debtor will suffer immediate and irreparable harm without the interim relief requested. The value of the Debtor's assets and the collateral, especially operations, will deteriorate rapidly if the Debtor is not permitted to access cash collateral. Permitting the Debtor to instead reorganize its business structure will allow for the maximum value for the bankruptcy estate and creditors.

17. Therefore, the Debtor requests that this Court grant it interim authority to use cash collateral in accordance with the terms of a final Budget until a further hearing on the Motion can be scheduled pursuant to Bankruptcy Rule 4001.

18. Notice of this Motion has been given to all creditors on the official creditor matrix.

**WHEREFORE**, the Debtor respectfully requests that the court grant the relief requested herein and such further and other relief as is just and proper.

Dated: Charlotte, North Carolina
November 1, 2022

/s/ *Cole Hayes*
—————————————
Cole Hayes (Bar No. 44443)
601 S. Kings Drive
Suite F PMB #411
Charlotte, NC 28204
704-490-4247
cole@colehayeslaw.com
*Proposed Attorney for the Debtor*

Case 22-30532   Doc 4   Filed 11/01/22   Entered 11/01/22 18:59:20   Desc Main
                Document      Page 7 of 7

Exhibit 1: Proposed Budget

| Week Ending: | Nov. 5 | Nov. 12 | Nov. 19 | Nov. 26 | Dec. 3 | Dec. 10 | Dec. 17 |
|---|---|---|---|---|---|---|---|
| Rent | $6,029.67 | $0.00 | $0.00 | $0.00 | $6,029.67 | $0.00 | $0.00 |
| Labor | $0.00 | $3,800.00 | $0.00 | $3,230.00 | $0.00 | $3,800.00 | $0.00 |
| Restaurant Supplies | $2,250.00 | $2,250.00 | $2,250.00 | $1,912.50 | $2,250.00 | $2,250.00 | $2,250.00 |
| Franchise Fee/Marketing | $725.00 | $725.00 | $725.00 | $500.00 | $725.00 | $725.00 | $725.00 |
| Utilities | $0.00 | $0.00 | $0.00 | $900.00 | $0.00 | $0.00 | $0.00 |
| Taxes | $0.00 | $0.00 | $1,030.23 | $0.00 | $0.00 | $0.00 | $0.00 |
| Credit Card Processing | $441.47 | $0.00 | $0.00 | $0.00 | $441.47 | $0.00 | $0.00 |
| Online Sales Fees | $780.00 | $0.00 | $0.00 | $0.00 | $780.00 | $0.00 | $0.00 |
| Bookkeeper | $0.00 | $0.00 | $0.00 | $0.00 | $700.00 | $0.00 | $0.00 |
| Attorney Fee Carve Out | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |

Case 22-30532    Doc 5    Filed 11/01/22    Entered 11/01/22 19:02:47    Desc Main
                 Document      Page 1 of 8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

In re:                              )   Chapter 11
                                    )
**Burley Foods, LLC**               )   Case No. 22-30532
                                    )
         Debtor.                    )

**MOTION FOR ORDER AUTHORIZING (I) MAINTENANCE OF EXISTING BANK ACCOUNT AND CASH MANAGEMENT SYSTEM, (II) CONTINUED USE OF EXISTING BUSINESS FORMS, (III) PAYMENT OF PREPETITION CHARGES AND FEES ASSOCIATED WITH CUSTOMER CREDIT CARD TRANSACTIONS AND DEBIT CARD TRANSACTIONS, AND (IV) PERFORMANCE UNDER FRANCHISE AGREEMENT**

Burley Foods, LLC (the "Debtor"), debtor and debtor-in-possession in the above-captioned case requests entry of an order authorizing the (i) maintenance of existing bank accounts and cash management systems, (ii) continued use of existing business forms, (iii) payment of prepetition charges and fees associated with customer credit and debit card transactions, and (iv) payment of franchise fees.

**JURISDICTION**

1. The Court has jurisdiction over the motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue of these proceedings and the Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105, 345, 363, 1107, and 1108 of the Bankruptcy Code.

**BACKGROUND**

3. On November 1, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.



---

Case 22-30532    Doc 5    Filed 11/01/22    Entered 11/01/22 19:02:47    Desc Main
                 Document      Page 2 of 8

4. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code. No examiner or statutory committee has been appointed in this case.

5. The Debtor is a limited liability company organized under the laws of the State of North Carolina and operates a restaurant known as Saladworks located at 11318 N. Community House Rd in Charlotte, North Carolina.

**A. Debtor's Bank Accounts and Cash Management System**

6. Prior to the Petition Date, in the ordinary course of business, the Debtor used a cash management system (the "Cash Management System"), the basic structure of which constitutes the Debtor's ordinary, usual, and essential business practices. The Cash Management System facilitates the timely and efficient collection, concentration, management, and disbursement of funds used by the Debtor. The Cash Management System is similar to those commonly employed by corporate enterprises comparable to the Debtor in size and complexity.

7. The Cash Management System consists of electronic bookkeeping and a Bank of America bank account (the "Bank Account"). The operations of the Debtor's business are funded, in part, from cash receipts which are deposited into the Bank Account. Creditors and normal operational costs are paid through the Bank Account. At no point during this bankruptcy case will the balance of the Bank Account exceed the limits of FDIC insurance.

8. Because the Debtor owes a debt to Bank of America, continued use of the Bank Account is not permitted pursuant to the Court's standard Subchapter V Operating Order.

9. Another integral component of the Debtor's Cash Management System is the Debtor's credit and debit card processing system (the "Card Processing System"). The Debtor primarily receives customer payments via credit and debit cards, which are processed through an

DocuSign Envelope ID: 65695A56-DE31-424F-8BCE-4967E2A072E8
Case 22-30532   Doc 22   Filed 11/07/22   Entered 11/07/22 16:03:01   Desc Main
Document     Page 10 of 16

Case 22-30532   Doc 5   Filed 11/01/22   Entered 11/01/22 19:02:47   Desc Main
Document     Page 3 of 8

Case 22-30532   Doc 5   Filed 11/01/22   Entered 11/01/22 19:02:47   Desc Main
Document     Page 4 of 8

agreement with WorldPay, Inc. (the "Card Processor"). The Debtor's arrangement and continued business with the Card Processor is critical to its operations and cash flows, especially given the substantial receipts paid by debit and credit cards.

10. The Debtor will open new bank accounts as required by the Court's Subchapter V Operating Order. However, it is likely that some pre-bankruptcy credit card payments will be deposited into the Bank Account by the Card Processor. Hence, it is necessary to, at least temporarily, maintain the Bank Account notwithstanding the debt owed to Bank of America.

**B.   Existing Business Forms and Records**

11. In the ordinary course of the Debtor's business, the Debtor uses a variety of business forms. By virtue of the nature and scope of the Debtor's business operations, it is important that the Debtor be permitted to continue using its business forms without alteration or change. Alteration such as adding a "debtor-in-possession" designation to these forms could impose a significant time and cost burden on the Debtor.

12. In the ordinary course of business, the Debtor maintains certain books and records in connection with the operation of its business. Continuing with such books and records subsequent to the Petition Date rather than closing those and opening new books will enable the Debtor to avoid unnecessary cost and burden.

**C.   Franchise Agreement**

13. The Debtor is a franchisee of Saladworks, LLC ("Saladworks").

14. Pursuant to the Debtor's and Saladworks' agreement, the Debtor remits a small portion of its revenue each week to Saladworks in exchange for use of its intellectual property, marketing, and other support functions.

15. The Debtor's relationship with Saladworks is critical, and the Debtor is current on its payment obligations to Saladworks (but for perhaps sales made within a day or two of the Petition Date).

**RELIEF REQUESTED**

16. By this Motion, the Debtor seeks, pursuant to sections 105, 363, 1107, and 1108 of the Bankruptcy Code, authorization to (i) continue use of the Debtor's existing business forms and records, (ii) maintain existing bank accounts and Cash Management System, (iii) pay prepetition charges and fees associated with customer credit and debit card transactions, and (iv) pay franchise fees.

**BASIS FOR RELIEF REQUESTED**

**A.   Maintenance of Existing Bank Account**

17. The Debtor seeks a temporary waiver of the Local Rules' and the Subchapter V Operating Order's requirement that the Bank Account be closed. If enforced in this case, this requirement would cause unnecessary disruption in the Debtor's normal Cash Management System and payment of credit and debit card receipts.

18. Maintenance of the Bank Account for the sole purpose of paying debts for immediate ongoing operations and collecting pre-petition amounts owed by the Credit Card Processor would greatly facilitate the Debtor's transition to post-petition operations. To avoid delays in payment of debts incurred post-petition and to ensure as smooth a transition into Chapter 11 as possible, the Debtor should be permitted to continue to maintain the existing Bank Account on a temporary basis.

19. The Debtor has the capacity to draw the necessary distinctions between prepetition and post-petition obligations. The Debtor is not aware of any pre-petition payments in transit that could clear after the Petition Date.

20. Out of an abundance of caution, to protect against the possible inadvertent payment of prepetition claims, the Debtor will withdraw the majority of funds from the Bank Account via cashier's check and deposit the same into a new account at a different bank prior to filing this case. Post-petition, the Debtor will routinely withdraw any deposited funds from the Bank Account and deposit the same into its new account. The Debtor will further coordinate with Bank of America to not honor payments made prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and directed by Debtor.

21. Subject to a prohibition against honoring prepetition checks and/or payments without specific authorization from this Court, the Debtor requests that the Bank Account be deemed a debtor-in-possession account and that the Debtor be authorized to maintain and continue use of the account for a period of eight weeks in the same manner and with the same account number, styles, and document forms as those employed during the prepetition period.

**B.  Continued Use of Existing Business Forms**

22. Changing correspondence and business forms would be unnecessary and burdensome to the estate as well as expensive and disruptive to the Debtor's business operations. To minimize expense on its estate, the Debtor also requests authority to continue to use all correspondence and business forms without reference to its debtor-in-possession status.

**C.  Continued Payment of Prepetition Credit Card Processing Fees and Related Charges**

23. The Debtor's revenue is primarily generated from credit card and debit card sales through the Card Processing System.

Case 22-30532   Doc 5   Filed 11/01/22   Entered 11/01/22 19:02:47   Desc Main
Document   Page 6 of 8

24. As set forth above, credit card and debit card practices were developed in the Debtor's ordinary course of business. Continuing to receive and process credit card and debit card transactions and payment of the related obligations, including pre-petition obligations, is (i) within the Debtor's ongoing ordinary course of business; (ii) necessary for the success and ultimate viability of the Debtor's business, (iii) essential to continued sales and maintenance of customer loyalty.

25. The disruption and adverse publicity that would necessarily result from the failure to continue to offer credit card and debit card payment options would threaten the Debtor's customer base and its ability to successfully reorganize, thereby causing harm to the Debtor and all parties-in-interest that is grossly disproportionate to the cost of the related obligations.

26. The Debtor has examined other options short of payment of those obligations related to credit cards and debit cards and has determined that to avoid significant disruption of the Debtor's business operations, there exists no practical alternative to payment of such obligations.

**D.  Performance under Franchise Agreement**

27. The Debtor requests to continue to honor its agreement with Saladworks by remitting the required franchise fees. Doing so will ensure that Saladworks continues to market the Debtor's business, permit the Debtor to use Saladworks' intellectual property, and support the Debtor's business operations.

28. The Debtor may not be able to specifically identify transactions that occur within the hours or day of the bankruptcy filings to delineate amount owed to Saladworks under the agreement for pre-versus post-petition franchise fees. In any event, the total amount paid to Saladworks on a weekly basis (approximately $725.00) is not a significant expense such that



tracing transactions down to the minute to parse between pre- versus post-petition sales would be more burdensome than beneficial.

29. Accordingly, the Debtor requests to continue paying Saladworks pursuant to its pre-petition agreement, including any outstanding pre-petition fees (without yet assuming the agreement pursuant to Section 365 of the Bankruptcy Code).

30. As with the Debtor's need to accept credit and debit cards, a continued relationship with Saladworks and performance under the franchise agreement is (i) within the Debtor's ongoing ordinary course of business, (ii) necessary for the success and ultimate viability of the Debtor's business, and (iii) essential to continued sales and maintenance of customer loyalty.

31. Without the ability to continue as a franchise of Saladworks, the Debtor will not be able to generate revenue. Disruption and adverse publicity that would necessarily result from the failure to maintain the Saladworks franchise would wipe out the Debtor's customer base, thereby causing harm to the Debtor and all parties-in-interest that is grossly disproportionate to the cost of making the required payments.

32. To the extent that the relief sought in the Motion constitutes a use of property under Section 363(b) of the Bankruptcy Code, Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, Debtor requests that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for Debtor to be able to continue to operate its business and preserve the value of the estate.

33. Nothing herein is intended or should be construed as an admission as to the validity of any claim against the Debtor, or a waiver of the Debtor's rights to dispute any claim, or an

Case 22-30532    Doc 5    Filed 11/01/22    Entered 11/01/22 19:02:47    Desc Main
Document      Page 8 of 8

approval of the assumption of any agreement, contract, or lease under Section 365 of the Bankruptcy Code.

34. Notice of this Motion has been given to all parties on the official creditor matrix.

**WHEREFORE**, Debtor respectfully requests the Court enter an order, authorizing Debtor's (i) continued use of the Debtor's existing business forms and records, (ii) maintenance of existing bank accounts and cash management system (iii) authorizing payment of prepetition charges and fees associated with customer credit card and debit card transactions, (iv) permitting the continued payment and performance under the Debtor's franchise agreement with Saladworks, and (v) granting Debtor such other and further relief as is just and proper.

Dated: Charlotte, North Carolina
November 1, 2022

/s/ *Cole Hayes*
Cole Hayes (Bar No. 44443)
601 S. Kings Drive
Suite F PMB #411
Charlotte, NC 28204
704-490-4247
cole@colehayeslaw.com
*Proposed Attorney for the Debtor*

Case 22-30532    Doc 6    Filed 11/01/22    Entered 11/01/22 19:04:03    Desc Main
                         Document    Page 1 of 4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **Burley Foods, LLC** | ) | Case No. 22-30532 |
| | ) | |
| Debtor. | ) | |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO MAINTAIN
AND ADMINISTER ITS EXISTING CUSTOMER PRACTICES AND TO HONOR
CERTAIN RELATED PREPETITION OBLIGATIONS**

Burley Foods, LLC (the "Debtor"), debtor and debtor-in-possession in the above-captioned case requests entry of an order authorizing the Debtor to maintain and administer its existing customer practices and to honor certain related prepetition obligations. In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

**BACKGROUND**

3. On November 1, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

4. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code. No examiner or statutory committee has been appointed in this case.

Case 22-30532    Doc 6    Filed 11/01/22    Entered 11/01/22 19:04:03    Desc Main
                         Document    Page 2 of 4

5. The Debtor is a limited liability company organized under the laws of the State of North Carolina and operates a restaurant known as Saladworks located at 11318 N. Community House Rd in Charlotte, North Carolina.

6. The Debtor has historically created certain customer practices (the "Customer Practices") to attract and maintain positive customer relationships in the ordinary course of business. On account of the Customer Practices, the Debtor may owe certain obligations to its customers and payment processors arising both before and after the Petition Date. The Debtor's Customer Practices are generally described as follows:

   a. The Debtor has historically allowed its customers to purchase pre-paid, non-expiring gift cards or gift certificates (collectively, the "Gift Cards"). The Gift Cards can then be redeemed for purchases at a later date and require the payment of a small processing fee.

   b. The Debtor may have also issued deals, specials, coupons for discounts, or other incentives (the "Customer Incentives") to customers in order to engender goodwill for the brand and generate revenue by encouraging sales.

**RELIEF REQUESTED**

7. By this Motion, the Debtor seeks, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, entry of an order by this Court authorizing the Debtor to maintain and administer its existing Customer Practices by (i) honoring all Gift Cards issued prior to the Petition Date; (ii) permitting the payment of related processing fees, and (iii) honoring all Customer Incentives in a manner consistent with its past practices.



## BASIS FOR RELIEF REQUESTED

8. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so. *See, e.g., In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).

9. Where retaining the loyalty and patronage of customers is critical to successful chapter 11 cases, bankruptcy courts have routinely granted relief similar to that requested herein. *See In re Skin Sense, Inc.*, 2017 Bankr. LEXIS 307, at *10-11 (Bankr. E.D.N.C. 2017) (noting that courts "routinely grant" motions to honor prepetition gift cards and that "courts grant chapter 11 debtors broad discretion as to whether to honor gift cards and to what extent based upon the debtor's business judgment").

10. Accordingly, the Court has authority to authorize the Debtor to continue the Customer Practices and pay prepetition claims arising thereunder, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Continuing to administer the Customer Practices without interruption during the pendency of this case is critical to preserve the value of the Debtor's assets by, most importantly, preserving customer goodwill and market share.

11. Failure to honor the Customer Practices could place the Debtor at a competitive disadvantage in the marketplace, erode the Debtor's hard-earned reputation and brand loyalty, adversely impact its prospects for a successful emergence from bankruptcy.

12. The Debtor believes that the relief requested by this Motion will maximize profitability and engender goodwill during this critical time. Accordingly, the Debtor submits that it has shown cause sufficient to warrant honoring of the Customer Practices and any obligations relating thereto, and respectfully requests that the relief sought herein be approved.

13. To the extent that the relief sought in the Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). Further, to the extent applicable, Debtor requests that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief requested in this Motion is immediately necessary for Debtor to be able to continue to operate its business and preserve the value of the estate.

14. Notice of this Motion has been given to all parties on the official creditor matrix.

**WHEREFORE**, Debtor respectfully requests the Court enter an order authorizing the Debtor to maintain and administer its existing Customer Practices by (i) honoring all Gift Cards issued prior to the Petition Date and permitting payment of related processing fees; and (ii) honoring all Customer Incentives in a manner consistent with its past practices.

Dated: Charlotte, North Carolina
November 1, 2022

/s/ *Cole Hayes*
Cole Hayes (Bar No. 44443)
601 S. Kings Drive
Suite F PMB #411
Charlotte, NC 28204
704-490-4247
cole@colehayeslaw.com
*Proposed Attorney for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| **Burley Foods, LLC** | ) | Case No. 22-30532 |
| Debtor. | ) | |

**MOTION FOR AUTHORITY TO PAY PRE-PETITION PAYROLL, PAYROLL TAXES, AND OTHER RELATED EXPENSES**

Burley Foods, LLC (the "Debtor"), debtor and debtor-in-possession in the above-captioned case requests entry of an order authorizing the Debtor to pay pre-petition wages, salaries, and taxes in accordance with existing company policies. In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory bases for the relief requested herein are sections 105, 345, 363, 507, 1107, and 1108 of the Bankruptcy Code.

**BACKGROUND**

3. On November 1, 2022 (the "Petition Date"), the Debtor filed its voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

4. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to section 1184 of the Bankruptcy Code. No examiner or statutory committee has been appointed in this case.

5. The Debtor is a limited liability company organized under the laws of the State of

North Carolina and operates a restaurant known as Saladworks located at 11318 N. Community House Rd in Charlotte, North Carolina.

6. The Debtor employs six individuals, none of whom are insiders of the Debtor.

7. The Debtor's employees are paid every two weeks. The next payroll date is November 11, 2022, which will include some wages accrued prior to the Petition Date.

8. In ordinary course of business, the Debtor uses ADP, LLC ("ADP") to calculate and process payroll. ADP calculates the taxes owed for the payroll period. The Debtor remits the payroll and taxes to ADP who in turn pays the payroll and taxes to the respective taxing authority.

9. The Debtor gives one of its employees a total of five days' vacation per year. Should that employee request compensation for unused vacation days, the Debtor will seek further order from this Court.

**RELIEF REQUESTED**

10. Pursuant to this Motion, the Debtor seeks authority to pay certain prepetition obligations to its employees including amounts owed to the employees for regular wages and earned pay and federal, state, and local payroll related taxes, deductions, and withholdings.

**BASIS FOR THE RELIEF REQUESTED**

11. The Debtor's employees will suffer undue hardship absent the relief requested via this Motion. The authorization sought in this Motion is necessary to enable the employees to meet their financial needs. If the requested relief is not granted, the employees will seek alternative employment.

12. The Debtor's ability to preserve its business and ultimately reorganize will be adversely affected if the company is unable to retain its workers. Accordingly, it is critical that the hardship caused by this Chapter 11 proceeding be minimized to preserve morale and to



Case 22-30532    Doc 7    Filed 11/01/22    Entered 11/01/22 19:05:12    Desc Main
                          Document      Page 3 of 3

maintain the employees, which will in turn preserve the value of the estate in the best interests of creditors.

13.  The Debtor further believes that the amounts it seeks to pay are entitled to priority claim status under section 507(a)(4) of the Bankruptcy Code. As such, these claims would be entitled to payment in full under any plan of reorganization. Authorizing the Debtor to make these payments at this time will impact only the timing of such payments.

14.  Permitting debtors-in-possession to pay pre-petition wage, salary, expense, and tax claims on the grounds that payment of such pre-petition claims is necessary to effectuate a successful reorganization and has been approved numerous times in cases filed in this judicial district.

15.  Notice of this Motion has been given to all parties listed on the official creditor matrix.

**WHEREFORE**, the Debtor respectfully requests that the Court authorize the payment of pre-petition payroll, payroll taxes, and other related expenses and grant such other and further relief as is just and proper.

Dated: Charlotte, North Carolina
November 1, 2022

/s/ Cole Hayes
_____
Cole Hayes (Bar No. 44443)
601 S. Kings Drive
Suite F PMB #411
Charlotte, NC 28204
704-490-4247
cole@coleshayeslaw.com
*Proposed Attorney for the Debtor*

